IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-CR-30001-DWD |
| | ) |
| KENDRICK FRAZIER, | ) |
| KENWYN FRAZIER, and | ) |
| JASMINE CRAWFORD, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

This matter is before the Court to address issues related to the status of counsel for Defendants Kendrick Frazier and Kenwyn Frazier. Defendants are charged with one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1).[1] After a finding that they are unable to financially afford counsel, a magistrate judge appointed attorneys from the CJA Panel to represent each defendant. CJA Panel Attorney John Stobbs was appointed to represent Kendrick Frazier, and CJA Panel Attorney Greg Smith was appointed to represent Kenwyn Frazier. To date, the Court has held several hearings and status conferences related to the status of representation for Defendants, an issue that came to a head when Attorney Beau Brindley moved to substitute as retained counsel for both Kendrick Frazier and Kenwyn Frazier, leading the Court to promptly inquire about whether joint representation is appropriate in this case.

---

[1] The use of "defendants" in this Order refers to Kendrick Frazier and Kenwyn Frazier and not to Defendant Jasmine Crawford.

On March 9, 2021, the Court held a status conference with all counsel and directed Attorney Brindley to file written waivers signed by each Defendant as well as a memorandum addressing the existence of any actual or potential conflicts of interest by noon on March 16, 2021. The United States was given the option of filing a memorandum, as well. The United States filed a brief on March 15, 2021. Attorney Brindley filed a brief on March 17, 2021. To date, written waivers have not been filed. The Court held a hearing on the motions to substitute counsel (Docs. 98, 99) on April 14, 2021. During the hearing, the Court along with counsel for Defendants and for the United States examined Defendants to determine whether their oral waivers of any conflicts of interest were knowing and intelligent. After hearing testimony from the defendants and arguments from counsel, the motions to substitute were denied. The Court now elaborates on the rulings issued from the bench.

### ALLEGATIONS AGAINST KENDRICK FRAZIER AND KENWYN FRAZIER

On August 13, 2020, Kenwyn and Kendrick Frazier allegedly kidnapped Kein Eastman because they believed that Eastman had taken personal property belonging to Kenwyn Frazier. Defendants allegedly took Kein from his grandmother's home at gun point. During the events that followed, Eastman was shot in the head or face by Defendants, and the shooting was recorded by a Ring doorbell camera. Eastman was last seen running from the scene of the shooting, bleeding heavily from his face. Kenwyn and Kendrick Frazier then got into an SUV and drove in the same direction in which Eastman fled. He has not been seen or heard from since.

At trial, the United States intends to identify Kenwyn Frazier as the person who initiated the kidnapping and Kendrick Frazier as the person who shot Kein Eastman. During the April 14, 2021 motion hearing, the United States acknowledged that its theory of this case involves differing levels of culpability for each defendant. Additionally, all parties have acknowledged on several occasions that the Government's investigation is ongoing, and a superseding indictment may be returned before trial that would charge Defendants with kidnapping resulting in death, a charge that carries the death penalty as a potential punishment. As a result, this case was designated as complex, and the Court has allowed appointed CJA counsel to proceed as if they are preparing to defend a capital case.

### ANALYSIS OF JOINT REPRESENTATION

In cases of joint representation, it is the Court's responsibility to "promptly inquire about the propriety of joint representation." The Court "must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." FED. R. CRIM. P. 44(c)(2). To that end, the Court recruited outside appointed counsel through the Federal Defender's Office to advise Defendants, separately, on several issues related to the risks and inherent dangers of joint representation.

The Sixth Amendment grants defendants who do not require appointed counsel the right to counsel of their choice. While there is a presumption in favor of a defendant's choice, it may be overridden where there is an actual conflict of interesting or a "serious

potential for conflict." *Wheat v. United States*, 486 U.S. 153, 164 (1988). At this time, there is not an identified actual conflict of interest associated with the proposed joint representation. But, even in the absence of an identified actual conflict, the nature of the charges, the likelihood of superseding charges, and apparent unequal culpability of the defendants raise that specter that here "[j]oint representation may present a conflict so concrete and serious that it intolerably undermines the right to effective assistance of counsel and justifies overriding the defendant's choice of counsel." *Id.* at 951 (citing *Wheat*, 486 U.S. at 146).

Because of this risk of undermining effective representation, district courts have "substantial latitude" to refuse a defendant's knowing and voluntary waiver. *Wheat*, 486 U.S. at 163. A reviewing court should start "from a default position that gives effect to the defendant's Sixth Amendment right to choose his own counsel" but then must determine whether a serious potential conflict of interest precludes joint representation. *Id*. In evaluating whether a potential conflict is serious and should lead to disqualification of counsel, a district court should evaluate "(1) the likelihood that the conflict will actually occur; (2) the severity of the threat to counsel's effectiveness; and (3) whether there are alternative measures available other than disqualification that would protect the defendant's right to effective counsel while respecting his choice of counsel." *Turner*, 594 F.3d at 952.

While Defendants offered answers indicating that they wanted to pursue joint representation, the Court's observation was that the responses were perfunctory and rote. Neither defendant could explain in his own words, even on a basic level, what they were

giving up by waiving their rights to conflict-free counsel or what risks were involved in such a decision. While each Defendant expressed a willingness to go forward with joint representation, Defendants' body language, hesitations, tones, and demeanors in the courtroom strongly suggested that their waivers were not knowing or intelligent. For these reasons, the Court was not convinced that the waivers were valid, knowing, and voluntary.

Even if the waivers were sufficient, serious potential conflicts of interest rebut the presumption in favor of Defendants' choice of joint representation. Here, the alleged victim was last seen running from Defendants after being shot in the face in August 2020. He has not been heard from since, nor has his body been found. The Government indicated that cooperation is not off the table, and, while potential cooperation alone is not grounds for overriding a waiver, in this case, with the potential for the death-penalty looming over these proceedings, an attorney jointly representing Defendants cannot provide conflict-free advice on whether to pursue or to accept an offer to cooperate.

Mr. Thompson represented that Defendants intend to go to trial, prompting the suggestion that conflict is, therefore, less likely to occur.  But, of course, the fact of going to trial alone does not in practice reduce the chance that serious potential conflicts of interest will arise. Another observation that can as easily be made is that such a resolute decision to proceed to trial at this juncture suggests — particularly given that it was reached so early in the case, before vast amounts of discovery has been fully reviewed and understood and before being made aware of the nature of charges which have yet to

be filed — that the Defendants do not have a full appreciation for the near certainty that conflict will arise and that it is likely to affect them or one of them negatively.

    The Government acknowledges that its view is that Defendants have different levels of culpability and involvement in the alleged crime. Joint representation here is not akin to a case of two tangentially related co-defendants represented by a single attorney where the Government may or may not call one co-defendant to testify against the other. Defendants are alleged to have been present together for a large portion, if not all, of the charged crime, but their individual actions are different. Effective representation through trial and sentencing, if convicted, likely will require one or both defendants to argue he has less culpability than the other. Each piece of evidence produced during discovery or at trial that points to one defendant being more culpable than the other presents an untenable situation for a single attorney. Put simply, they are not equally yoked, nor will they be at the time of trial.

    If this case proceeds to trial, effective advice as to whether each defendant should testify cannot be given in the case of joint representation because both defendants were present for all or most of the acts charged. The testimony of one defendant at trial is highly likely to hurt the other's defense, precluding an attorney representing Defendants from providing competent advice to either. This list of serious potential conflicts is not exhaustive. As noted on the record, at every turn a potential conflict of interest exists, and these conflicts are serious, particularly in light of the charges and potential charges against defendants. It is highly likely, if not entirely unavoidable, that these potential conflicts will manifest into actual conflicts if joint representation is allowed in this case.

For all these reasons, even assuming Defendants' waivers could be construed as knowing and voluntary, measures other than disqualification cannot protect Defendants' rights to effective counsel. Accordingly, the motions to substitute are **DENIED** and Attorneys Beau Brindley and Michael Thompson are **DISQUALIFIED** from representing Defendants Kendrick Frazier and Kenwyn Frazier. Defendants will continue to be represented by their appointed CJA Panel Attorneys until further order of this Court.

**SO ORDERED.**

Dated: April 20, 2021

/s/*David W. Dugan*
DAVID W. DUGAN
United States District Judge