**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 21 CR 30001-DWD** |
| **vs.** | ) | |
| | ) | **Hon. David W. Dugan** |
| **KENDRICK FRAZIER,** | ) | **Presiding Judge** |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT KENDRICK FRAZIER'S RENEWED MOTION TO
SUBSITUTE ATTORNEY AND MOTION TO RECONSIDER DENIAL OF
MOTION TO SUBSTITUTE**

Now comes the defendant, Kendrick Frazier, and respectfully requests this Honorable Court allow Vadim A. Glozman of the Law Offices of Vadim A. Glozman to substitute as counsel in this case and to reconsider its denial of the initial motion to substitute.  R. 237.   In support, the following is offered:

The undersigned is Kendrick Frazier's counsel of choice as guaranteed by the Sixth Amendment to the United States Constitution.  Such has been reinforced by both Mr. Frazier and a member of his family.  That, however, was not enough. After initially informing the undersigned, at the December 6, 2021 court hearing, that the motion to substitute as attorney for record for Mr. Frazier will be denied, an order outlining this Court's ruling was entered on December 24, 2021.  The denial of Mr. Frazier's counsel of choice was not rooted in any actual conflict of the undersigned's representation but rather a perceived conflict of Attorney Beau Brindley that was imputed onto the undersigned.  This, however, is not supported by law or the facts of the undersigned's relations with Brindley.

As this Court knows, Brindley and the undersigned are not members of the same law firm. Their respective practices are two separate entities. They share no employees. They have no joint bank accounts. They do not share profits. They keep their case files on opposite sides of the office suite. They do not share a phone number[1]. And, importantly, they do not hold themselves out to be any kind of partnership. To that end, it does not follow how this Court characterized that their relationship as "[c]learly … as close as one expects among partners and shareholders." R. 237, pg. 4.

In *Burger v. Kemp*, the Supreme Court held that there is no conflict of interest where two different attorneys, who were partners *in the same firm*, represented codefendants with antagonistic defenses. 483 U.S. 776, 783-88 (1987) (emphasis provided). Here, the relationship between Brindley and the undersigned is even more attenuated than in *Burger* because no legal partnership exists between the firms and sharing an office space, regardless the size, is not a valid reason to conflict an attorney of choice. *See United States v. Whitney,* 180 F. App'x 670, 674 (9th Cir.2006) ("[M]erely sharing office space does not establish joint representation for Sixth Amendment purposes."); *Allison v. Ficco,* 388 F.3d 367, 370 (1st Cir.2004) (holding in a habeas case that the state court "reasonably found … that the … office-sharing arrangement was even less conducive to actual conflict than the *Burger* law firm[.]"); *Gray–Bey v. United States,* 156 F.3d 733, 738–40 (7th Cir.1998); *United States v. Kindle,* 925 F.2d 272, 275 (8th Cir.1991) ("Solo practitioners sharing office

---

[1] The undersigned does use Brindley's office fax number when necessary.

space with common staff and materials is not unusual and such an arrangement does not necessarily cause a conflict of interest when codefendants are thus represented."); *United States v. Turchi,* 645 F.Supp. 558, 561–62 (E.D.Pa.1986); *see also United States v. Urias–Bojorquez,* 205 F. App'x 706 (10th Cir.2006) (finding no reversible error where defendant was not given a Rule 44(c) inquiry and two attorneys shared an address and fax number because there was no actual conflict); *United States v. Varca,* 896 F.2d 900, 902–04 (5th Cir.1990) ("While members and associates in one firm may not represent conflicting interests, practitioners who share office space and occasionally consult with one another are not regarded as constituting a single firm for conflict purposes.").

Aside from sharing office space, the only two factors in Brindley and the undersigned's relationship that this Court pointed to was that they "sometimes share staff and cases" and that they both "share the same legal specialty and hold themselves out as criminal defense attorneys." R. 237, pg. 4. Regarding the latter, nothing in that conclusion lends itself to conflict or a partnership. The firms do not hold themselves out to be a partnership or a legal association in any matter. To that end, the vast majority of the firms' cases are independent of one another. The firms do not share profits from their independent practices and charge separate fees when representing codefendants or witnesses.

With regards to the sharing of staff, such is seldom done and occurs with no consistency. When this Court posed the question "[y]ou share staff, interns or secretaries, anything at all", the undersigned replied "[Brindley's] secretary helps me

out sometimes, but I don't pay any of his employees.  I have my own associate."  *See,*
*Transcript of Proceeding* (Tr."), December 6, 2021, pgs. 8-9.  When pressed further by
this Court, ("What do you do for a secretary?"), the undersigned unequivocally stated
that he does his own administrative work."  *Id.* at pg. 11.   Brindley's executive
assistant does not work for the undersigned.   Surely, she helps the undersigned
"sometimes", but never on Mr. Frazier's case.  *See Id.* at pg. 12 ("Your Honor, I haven't
talked to his secretary about this case.").   Regardless, sharing administrative staff
does not constitute an imputed conflict.  *See United States v. Badalamente,* 507 F.2d
12, 20–21 (2d Cir.1974), *cert. denied,* 421 U.S. 911 (1975) (finding no conflict where
record showed that attorneys shared office space and secretary, but interests did not
overlap in accepting clients or sharing of fees);  *United States v. Bell,* 506 F.2d 207,
224–25 (D.C.Cir.1974) (finding no conflict where evidence disclosed that
attorneys shared office space but practiced independently). "Shared space and
resources is relatively common among solo practitioners." *Rivas v. United States,* No.
96 CV 2954(SJ), 1997 WL 391464 (E.D.N.Y. Jul. 8, 1997) (finding no conflict where
attorneys shared office space and a secretary).

Brindley and the undersigned are not in a partnership nor are they
shareholders in the same firms.  Their share office space and infrequent sharing of
staff and cases does not establish a clear relationship that one would expect partners
or shareholders to have.  But, assuming *arguedo*, that the relationship between the
firms somehow mirrors one of a partnership – which it does not – the Seventh Circuit
has expressly found that no conflict existed where two attorneys "engaged in practices

that are typical of partnership relations, such as paying rent for their shared office space jointly, commingling client revenues, or routinely representing common clients." *Gray-Bey*, 156 F.3d at 739 n.2; *see also United State v. Lake*, 308 Fed. Appx. 6, *9 (7th Cir. 2009) (rejecting premise that office-sharing arrangement with another attorney effectively made them a single "firm").

In denying Mr. Frazier his counsel of choice – the undersigned – this Court placed an improper burden on the undersigned to prove that no conflict existed because of the office sharing arrangement. R. 237, pg. 4 (["Mr. Glozman] has failed to meet the burden of his motion."). But there is no burden in a motion to substitute to prove that no conflict exists, particularly when the conflict is not apparent considering that the attorneys work for separate firms. A presumption exists in favor of a criminal defendant's counsel of choice, and it is *the government* that bears the risk of non-persuasion. *See, e.g., Wheat v. United States*, 486 U.S. 153, 164 (1988); *United States v. Turner*, 594 F.3d 946, 948, 951-52 (7th Cir. 2010); *Rodriguez v. Chandler*, 382 F.3d 670, 672 (7th Cir. 2004). Upon the undersigned filing a motion to substitute on behalf of Mr. Frazier, the government filed no opposition to the motion nor a notice of any potential conflict. And during the December 6, 2021 hearing, when asked about their position, the government offered no position on the conflict nor any evidence that supported there being a conflict. Tr., pg. 9 ("Your Honor, this Court's been extremely thorough in the past in making inquiries and we would defer to the judgement of the Court.").

As the undersigned truthfully told this Court, prior to agreeing to represent Mr. Frazier, the undersigned scheduled a legal phone call with Mr. Frazier to inquire about any confidential conversations he may have had with Brindley.  Mr. Frazier informed the undersigned that he had never talked to Brindley.  It was based on this exchange that the undersigned agreed to engage in this matter. Tr., pg. 6 ("Because of the conflict situation that occurred here, Your Honor, before I agreed to take on the case, I set up a legal call with Kendrick Frazier and I asked him point-blank right away, 'Did you have any privileged conversations with Mr. Brindley about your case?' And he told me, you could ask him, Your Honor, that he's never spoken to Mr. Brindley.").  The undersigned later learned that Mr. Frazier did speak with Brindley's associate, Michael Thompson, briefly in this Court about what would happen that day concerning the potential conflict of interest and substitution of counsel motion Brindley's firm had filed.  It was the undersigned's understanding that this conversation did not pertain to any privileged information, did not pertain to any facts of the case, and was in a public courtroom with others present.  None of the contents of that conversation were ever communicated to the undersigned, nor has the undersigned spoken to Michael Thompson about this case.

During the December 6, 2021 hearing, Mr. Frazier was seated next to the undersigned and this Court had the opportunity to question him regarding this interaction or any other interaction with Mr. Brindley.  This Court did not.  Such questioning would dispel any sort of conflict that may have arisen with Brindley, and certainly shed light on the fact that no conflict existed with the undersigned

representing Mr. Frazier.  And even if a potential conflict did exist, Mr. Frazier would have been given the opportunity to waive it, which he was not.

Mr. Frazier should not have been prevented from having the undersigned represent him as his counsel of choice, particularly where the government voiced no objection.  "[C]ourts will not 'assume too paternalistic an attitude in protecting the defendant from himself,' and although the defendant's choice of counsel 'may sometimes seem woefully foolish' to the court, the choice remains his." *United States v. Curcio*, 694 F.2d 14, 25 (2nd Cir. 1982).  Doing so here deprives Mr. Frazier of his inherent rights as enumerated in the Sixth Amendment.  None of the issues regarding Brindley's representation of the defendants in this matter pertain to the undersigned.  The undersigned has a law firm separate and apart from Brindley.  No confidential or privileged information has or will flow between the firms.  At the very least, this Court should have conducted an in-court inquiry of Mr. Frazier regarding any perceived conflict.

Should the undersigned be permitted to represent Mr. Frazier, the only individuals that would read the file, communicate with Mr. Frazier, and attend court proceedings are the undersigned and his associate.  The undersigned and Brindley keep their files separate and will continue doing so.  Neither Brindley's executive assistant nor anyone else from his firm would work on the case.  These assurances are certainly enough to dispense any reservations this Court may have with the undersigned's representation of Mr. Frazier.

Wherefore, for the reasons stated above, defendant Kendrick Frazier respectfully asks this Court to grant the renewed motion to substitute attorney and reconsider its previously denial of the motion to substitute.

Respectfully submitted,

s/ Vadim A. Glozman

Vadim A. Glozman
LAW OFFICES OF VADIM A. GLOZMAN
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
P: (312) 726-9015

## CERTIFICATE OF SERVICE

I, Vadim A. Glozman, hereby certify that on this, the 30th day of December, 2021, I filed the above-described document on the CM-ECF system of the United States District Court for the Southern District of Illinois, which constitutes service of the same.

Respectfully submitted,

*/s Vadim A. Glozman*

LAW OFFICES OF VADIM A. GLOZMAN
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 726-9015