IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 21-cr-30001-DWD |
| ) | |
| KENDRICK A. FRAZIER, ) | |
| KENWYN L. FRAZIER, and ) | |
| JASMINE M. CRAWFORD, ) | |
| | |
| Defendants. | |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Pending before the Court are four motions in limine filed by Defendant Kendrick Frazier (Doc. 303), joined by his brother, Defendant Kenwyn Frazier (Doc. 304). The Government has filed its response (Doc. 306), and the Court heard oral argument regarding the same on October 12, 2022. After oral argument, the Government filed a supplemental response to Defendants' motion in limine No. 3 (Doc. 317), and Defendants filed a supplemental reply to the same (Doc. 318). The Court, being fully advised in the premises, orders as follows:

### I.  Applicable Legal Standards

*A.    Limine Rulings*

The Federal Rules of Evidence do not explicitly authorize in limine rulings, but the practice of using such rulings has developed under the district court's inherent authority to manage trials. *Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1984). Motions in limine are intended

"to avoid the delay and occasional prejudice caused by objections and offers of proof at trial." *Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999). *Accord Palmieri v. Defaria*, 88 F.3d 136, 141 (2nd Cir. 1996) (motions in limine aid the trial process by "enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence … without lengthy argument at, or interruption of, the trial."). Such motions permit the district court to eliminate evidence "that clearly ought not be presented to the jury," because it is "inadmissible for any purpose," *Jonasson v. Lutheran Child and Family Services*, 115 F.3d 436, 440 (7th Cir. 1997). Additionally, the "prudent use of the in limine motion sharpens the focus of [the] trial proceedings." *Jonasson*, 115 F.3d at 440.

Motion in limine rulings are made before the court has had a chance to hear all of the evidence or see the trial develop. As such, these rulings are preliminary and may be revisited based on the court's exposure to the evidence at trial. *U.S. v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989), *citing Luce*, 469 U.S. at 41 ("a ruling [in limine] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer. Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

B.   *Admissibility Generally*

"All evidentiary questions begin with Rule 402, which contains the general principle that '[r]elevant evidence is admissible' and [i]rrelevant evidence is not.'" *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) (en banc). Evidence is relevant if it has any tendency to make a fact of consequence more or less probable. FED. R. EVID. 401.

Under Federal Rule of Evidence 403, the Court has authority to exclude relevant evidence if its "probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

## II. Background

Defendants are charged with one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1). The Superseding Indictment, as modified by the Court in connection with Kendrick Frazier's earlier filed motion to strike surplusage from the indictment (Docs. 279 & 283), alleges as follows:

> On or about August 13, 2020, in St. Clair county, within the Southern District of Illinois, KENDRICK A. FRAZIER and KENWYN L. FRAZIER, defendants herein did unlawfully and willfully seize, confine, kidnap and carry away K.E., and otherwise hold K.E., and used and caused to be used a means, facility, and instrumentality of interstate commerce, namely, being a Dodge Durango motor vehicle and cellular telephones, in committing and in furtherance of the commission of the offense.

(Docs. 226 & 283).[1]

Under the Federal Kidnapping Act, the Government must prove that: (1) the defendant knowingly and acting contrary to law, kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away any person; and (2) held the person for ransom, reward, "or otherwise" (to include any purpose or benefit); and; (3) (i) the person was willfully transported in interstate or foreign commerce; or (ii) the offender traveled in interstate or foreign commerce; or (iii) the offender uses the mail or any means, facility,

---

[1] On June 16, 2022, the Court granted Kendrick Frazier's motion to strike surplusage from the indictment. The language included in the indictment regarding the purpose of the alleged kidnapping ("for their own benefit and purpose") was ordered stricken. (Doc. 283, p. 21).

3

or instrumentality of interstate of foreign commerce in committing or in furtherance of the commission of the offense. 18 U.S.C. § 1201. *See also United States v. Jones,* 808 F.2d 561, 565-67 (7th Cir. 1986) ("The elements of kidnapping are: a knowing and willful transport, in interstate commerce, of an unconsenting individual for any purpose.").

### III.  Discussion

*<u>Defendants' Alleged Gang Affiliation (MIL No. 1)</u>*

Defendants seek to preclude at trial any testimony, evidence, or argument about Kendrick and Kenwyn Frazier's membership in and affiliation with the Waverly Crips street gang. The Government has responded, stating that it does not intend to elicit such testimony or evidence at trial. Accordingly Defendants' Motion in Limine No. 1 is **GRANTED**. The Government is barred from presenting, introducing or eliciting evidence or arguing in the presence of the jury that the Defendants are members of the Waverly Crips.

*<u>Threats to Witness Safety or Intimidation (MIL No. 1)</u>*

Defendants seek to preclude at trial any testimony, evidence, or argument regarding alleged threats to the witnesses or that any witness feared for their safety by testifying against Kendrick and Kenwyn Frazier. The Government has responded, stating that it does not intend to introduce any evidence of specific threats or intimidation to witnesses on the part of Kenwyn or Kendrick Frazier. The Government notes, however, that if a particular witness is impeached at trial regarding her prior inconsistent statements and/or conduct in the course of the investigation, it may seek to elicit testimony as to such threats or her fear for safety.

4

Accordingly, Defendants' Motion in Limine No. 2 is **GRANTED in part.** The Government is barred from presenting, introducing or eliciting evidence or arguing in the presence of the jury that any witness was threatened or feared for her safety if she were to testify against either Defendant. Should the Government, following impeachment, seek to introduce evidence regarding threats or fear of safety on the part of the witness if she were to testify against either Defendant, it shall first advise the Court outside the presence of the jury of its intent to do so, such that further hearing can be conducted prior to introduction of such evidence.

### *Kein Eastman's Death or Disappearance*

Defendants seek to preclude any evidence or argument that Kein Eastman is dead or missing. Defendants contend that such evidence should be excluded as irrelevant under Federal Rule of Evidence 401, or, in the alternative, because its probative value is outweighed by the risk of prejudice to Defendants, such that it should be excluded under Federal Rule of Evidence 403.

The Government has responded, stating that it does not intend to introduce evidence, testimony, or argument that Eastman is in fact dead or that he died during the kidnapping. However, the Government argues that it should be allowed to introduce testimony that Eastman has not been heard from or seen by any family members or law enforcement officers who have made attempts to find him since the night of the kidnapping. According to the Government, under Rule 401, such evidence is probative as it presents a complete picture of the alleged offense and explains why a key witness is not testifying at trial. The Government further contends that the probative value of the

5

limited evidence it seeks to introduce is not substantially outweighed by the danger of unfair prejudice.

In support of its argument, the Government points to the "complete-the-story" theory of relevance, noting that the Seventh Circuit has indicated that "[e]vidence is relevant if its exclusion would leave a chronological and conceptual void in the story." *United States v. Vretta*, 790 F.2d 651, 655 (7th Cir. 1986). The Government also notes the Seventh Circuit has "recognized that limited evidence of murder [or death] is admissible when needed to explain other evidence," (Doc. 317, p. 2) (citing *United States v. Weston*, 708 F.2d 302, 308 (7th Cir. 1983), and identifies several cases where evidence of a death was admitted to explain other evidence in the case. In essence, the Government contends that these cases support the proposition that evidence of a disappearance is relevant and admissible if that evidence is essential to a full presentation of the case.

At the outset, the Court notes that the Seventh Circuit has "expressed concerns" about "overuse" of the "complete the story" theory of relevance and about admitting evidence "merely to complete the story." *United States v. Lowe,* 2 F.4th 652, 656 (7th Cir. 2021); *United States v. Nelson*, 958 F.3d 667, 670-671 (7th Cir. 2020). *See also United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014). Although the Appellate Court's criticism typically relates to use of the theory to admit to other-act evidence, at least one concern seems to be applicable anytime the doctrine is invoked: Such evidence is easily misused and is particularly problematic when the disputed evidence has "nothing to do with" or is only "tangentially related to" the charged crime. *Nelson*, 958 F.3d at 671; *United States v. Conner,* 583 F.3d 1011, 1021 (7th Cir. 2009). Thus, although a hallmark of relevant evidence is that

its "exclusion would leave a chronological and conceptual void in the story," *United States v. Vretta,* 790 F.2d 651, 655 (7th Cir. 1986), the analysis does not end there. Courts must also remember that, to be relevant, there must be some connection between evidence offered to "complete the story" and "the issues of the case or material facts at issue." *United States v. Westbrook*, 125 F.3d 996, 1007 (7th Cir. 1997).[2] *See also* Advisory Committee Notes on FED. R. EVID. 401) ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. Does the item of evidence tend to prove the matter sought to be proved?.").

As previously noted, "[t]he elements of kidnapping are: a knowing and willful transport, in interstate commerce, of an unconsenting individual for any purpose." *United States v. Jones,* 808 F.2d 561, 565-67 (7th Cir. 1986). Evidence that Eastman has not been seen or heard from since the alleged kidnapping is not necessary to prove any element of the charged conduct. And, other than arguing that the jury will question why Eastman is not testifying, the Government has not identified a connection between Eastman's disappearance and any material matters at issue in this case. This distinguishes the instant case from those referenced in the Government's briefing.

---

[2] As explained by the Seventh Circuit in *Westbrook*:

> Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evidence which is not relevant is not admissible. One measure of the relevance of evidence is whether its exclusion would leave a chronological and conceptual void in the story. On the other hand, evidence is not relevant if there is no connection between the evidence and the issues of the case or material facts at issue.

125 F.3d 996, 1007 (7th Cir. 1997) (internal quotations and citations omitted).

For example, in *United States v. Accetturo,* 966 F.2d 631 (11th Cir. 1992), a key government witness disappeared two days before the jury trial was to begin. *Id.* at 633.³ The trial court allowed the government to introduce the witness's written statement and his oral identification of the defendant. The trial court also informed the jury that the witness was deceased and provided a limiting instruction. On appeal, the defendants argued that telling the jury the witness had died was unduly prejudicial. The Appellate Court disagreed: "The fact that [the witness] had died was relevant to explain the fact that [the witness] did not testify. Had the jury not been told, they might well have incorrectly concluded that [the witness] was incarcerated or was afraid to testify…" *Id.* at 637. As noted by Defendants, this case is distinguishable. In *Accetturo*, evidence of the witness's death was necessary to explain the choice of using written statements as opposed to live testimony for relevant evidence presented to the jury at trial. Here, the Government seeks to introduce evidence of Eastman's alleged disappearance to explain why the Government is not producing evidence, and the Government has failed to establish that the disputed evidence would tend to prove any matter sought to be proved in the case.

Evidence of Eastman's alleged disappearance is also distinguishable from the evidence at issue in *United States v. Vretta*, 790 F.2d 651 (7th Cir. 1986). *Vretta* involved the kidnapping and murder of Allen Hauser. Prior to trial, the defense submitted a motion in limine, seeking to exclude from evidence the facts and circumstances of Mark Houser's

---

³ The witness was later found murdered.

death. *Id.* at 654. Mark Hauser, Allen Hauser's son, was found strangled to death in the family's home. *Id.* The evidence indicated that Allen Hauser arrived home shortly after his son was killed and was then kidnapped and strangled by the defendant. *Id.* Defense counsel acknowledged the circumstances surrounding Mark Houser's death were probative of whether Allen Hauser left his home voluntarily, but contended the prejudicial effect of introducing that evidence would "make a kidnapping case into a murder case and a kidnapping and would create such a diversion in the jury's mind that their focus…[would] be on the terrible circumstances of what is apparently a very unfortunate and unnecessary death rather than specific elements of kidnapping." Defense counsel also offered to stipulate that if Allen Hauser was abducted, he went along involuntarily. The trial court allowed the Government to present evidence of Mark Hauser's death, over the defendant's objections.

On appeal, the Seventh Circuit explained that evidence of Mark Hauser's death was relevant to several material issues in the case, including the timing of Allen Hauser's kidnapping and the violence used to restrain him, the motive for the kidnapping and killing, and to rebut a defense raised by the defendant. As such, the Appellate Court concluded, "evidence of Mark's tragic death was relevant because to exclude it, would have left a chronological and conceptual void in the story of Allen Hauser's kidnapping." *Id.* at 655-56. *See also Id.* at 656 ("The jury, in reviewing, weighing and piecing together the evidentiary jigsaw puzzle when determining the ultimate question of guilt or innocence, was entitled to a complete and accurate picture of the crime scenario, from the

time the green Buick Skylark, rented by Vretta, arrived at the scene of the crime until the kidnaper departed from the Hauser home.").

The operative circumstances in this matter greatly differ from those in *Vretta*. First, there is no certainty of Eastman's death, life or current whereabouts. And, it is not known if his current absence is voluntary or involuntary, or whether it is attributable to the Defendants. Secondly, evidence that he is missing is probative of nothing at issue in this case. Rather, filling any "chronological or conceptual void" with evidence that Eastman is "missing" or that he has not been heard from for period of time, would not "complete the story" but would only inject mere speculation and conjecture concerning the reason for his absence. As such, the Court finds that the proposed evidence is not only irrelevant to charge of kidnapping, but also manifestly prejudicial. Evidence that does not point the jury to any fact necessary to be proved and that serves little more than to invite or emote conjecture should be excluded.

For these reasons, Defendants' Motion in Limine No. 3 is **GRANTED**. The Government is barred from presenting, introducing or eliciting evidence or making argument in the presence of the jury that Kein Eastman is deceased or that he has not been seen or heard from since the alleged kidnapping.

### *Items Seized from the Residence Where Kendrick Frazier was Arrested*

Defendants seek to preclude at trial any testimony, evidence, or argument regarding evidence seized from the residence where Kenwyn and Kendrick Frazier were arrested approximately five months after the alleged kidnapping. The Government has responded, stating that it does not intend to seek to admit any of the evidence seized at

10

133 Hillwood Drive during the arrest of Kenwyn and Kendrick Frazier, to include (1) the FN Five-seveN semi-automatic pistol with ammunition, jar of cannabis, (2) bags of pills, (3) a "lean" making machine, (4) three cellular phones, and (5) $6460 in U.S. currency.

Accordingly, Defendants' Motion in Limine No. 4 is **GRANTED**. The Government is barred from, presenting, introducing or eliciting evidence or arguing in the presence of the jury regarding the items of evidence seized from the residence where Kenwyn and Kendrick Frazier were arrested.

The parties are admonished that the proponent of any witness called to testify at trial shall advise such witness of the contents of this order relevant to his or her testimony and that a violation of this order may result in a mistrial and/or the imposition of sanctions, including contempt. In the event one side contends that the other side has opened the door to inquiry into matters barred by this order, the side making that contention shall seek a sidebar and obtain advance approval of the Court before asking any questions or making any argument on matters barred by this order.

**SO ORDERED.**

Dated: October 19, 2022

*s/David W. Dugan*
DAVID W. DUGAN
United States District Judge
